UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JAMEEK SIMMONS, NAKIA GREEN and LEEIPOLE WHITAKER,

                       Plaintiffs,

            -against-

Detective JAVIER APONTE, Shield No. 11268; Detective ANTONIO D. SANTANA, Shield No. 30589; Detective CHARLES INGRASSIA, Shield No. 1149; Sergeant JAMES O'NEILL, Shield No. 1894; Sergeant AFZAL ALI, Shield No. 3872; Detective JOSEPH FERNANDEZ; Shield No. 1815; Detective KARANLALL BRIJBUKHAN, Shield No. 660; and JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                       Defendants.
------------------------------------------------------------------ x

**THIRD AMENDED COMPLAINT**

13 CV 1890 (ERK)(SMG)

Jury Trial Demanded

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiffs demand a trial by jury in this action.

## PARTIES

6. Plaintiff Jameek Simmons ("Mr. Simmons") is a resident of Kings County in the City and State of New York.

7. Plaintiff Nakia Green ("Ms. Green") is a resident of Kings County in the City and State of New York.

8. Plaintiff Leeipole Whitaker ("Mr. Whitaker") is a resident of New York County in the City and State of New York.

9. Defendant Detective Javier Aponte, Shield No. 11268 ("Aponte"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Aponte is sued in his individual and official capacities.

10. Defendant Detective Antonio D. Santana, Shield No. 30589 ("Santana"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Santana is sued in his individual and official capacities.

11. Defendant Detective Charles Ingrassia, Shield No. 1149 ("Ingrassia"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Ingrassia is sued in his individual and official capacities.

12. Defendant Sergeant James O'Neill, Shield No. 1894 ("O'Neill"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant O'Neill is sued in his individual and official capacities.

13. Defendant Sergeant Afzal Ali, Shield No. 3872 ("Ali"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Ali is sued in his individual and official capacities.

14. Defendant Detective Joseph Fernandez, Shield No. 1815 ("Fernandez"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Fernandez is sued in his individual and official capacities.

15. Defendant Detective Karanjall Brijbukhan, Shield No. 660 ("Brijbukhan"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Brijbukhan is sued in his individual and official capacities.

16. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 1 through 10.

17. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of defendant City of New York and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

18. At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

19. At approximately 6:00 a.m. on February 7, 2013, plaintiffs were lawfully inside of 1027 Belmont Avenue, in apartment 2F, in Brooklyn, New York.

20. Ms. Green and Mr. Whitaker did not reside at the abovementioned address.

21. Defendants, in riot gear and with guns drawn, stormed into the apartment.

22. As Mr. Simmons was sleeping in bed that morning defendant officers stormed into the room and assaulted and battered him.

23. Notwithstanding that Mr. Simmons did not resist in anyway and voluntarily placed his hands behind his back as he lay on the bed to show compliance, defendants dragged plaintiff off of the bed and kicked and punched him.

24. Defendants repeatedly punched Mr. Simmons on the right side of his face and on his right ear.

25. Defendants dragged Ms. Green across the floor, kneed her and handcuffed her.

26. Mr. Whitaker had asleep on a sofa at the time defendants stormed into the apartment.

27. Notwithstanding, defendants threw Mr. Whitaker onto the floor, forcefully turned him over, kneed him in his back and handcuffed him.

28. Without probable cause or reasonable suspicion to believe Ms. Green or Mr. Whitaker had committed any crime or offense, defendants handcuffed them and placed them, along with Mr. Simmons, into a police van.

29. Plaintiffs were eventually taken to the 75th Precinct.

30. At the Precinct, Mr. Simmons requested medical attention, but defendants threatened that if he sought treatment he would be held longer.

31. Officers at the Precinct falsely informed employees of the Kings County District Attorney's Office that they had observed Ms. Green in criminal possession of a controlled substance and prepared false paperwork to the effect, including an arrest report.

32. Officers also falsely informed employees of the Kings County District Attorney's Office that they had observed Mr. Whitaker commit a crime and prepared false paperwork to the effect, including an arrest report.

33. Ms. Green and Mr. Whitaker were taken to Manhattan Central Booking.

34. Ms. Green was eventually arraigned in criminal court where she was released on her own recognizance.

35. Mr. Whitaker was released from a back door at Central booking without ever seeing a judge after approximately 24 hours in custody.

36. After making several criminal court appearances, the charges against Ms. Green were dismissed in their entirety.

37. Following his release from custody, Mr. Simmons sought treatment for pain and hearing loss in his right ear as well as headaches.

38. Mr. Simmons was diagnosed with a traumatic punctured eardrum and was prescribed medications.

39. Mr. Simmons continues to require medical treatment for his injuries.

40. Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs suffered emotional distress, mental anguish, fear, severe pain and bodily injury, anxiety, embarrassment, humiliation, and damage to their reputations.

## FIRST CLAIM
### Unlawful Stop and Search

41.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

42.     Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched plaintiffs, Nakia Green and Leeipole Whitaker, without reasonable suspicion.

43.     As a direct and proximate result of this unlawful conduct, plaintiffs, Nakia Green and Leeipole Whitaker, sustained the damages hereinbefore alleged.

## SECOND CLAIM
### False Arrest

44.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

45.     Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiffs, Nakia Green and Leeipole Whitaker, without probable cause.

46.     As a direct and proximate result of this unlawful conduct, plaintiffs, Nakia Green and Leeipole Whitaker, sustained the damages hereinbefore alleged.

## THIRD CLAIM
### Malicious Prosecution

47.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

48. By their conduct, as described herein, and acting under color of state law, defendants are liable to plaintiff Nakia Green under 42 U.S.C. § 1983 for the violation of her constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

49. Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive plaintiff of her constitutional rights. The prosecution by defendants of plaintiff Nakia Green constituted malicious prosecution in that there was no basis for the plaintiff's arrest, yet defendants continued with the prosecution, which was resolved in plaintiff's favor.

50. As a direct and proximate result of defendants' unlawful actions, plaintiff Nakia Green has suffered, and will continue to suffer, damages, including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation, embarrassment and loss of reputation.

## FOURTH CLAIM
### Unreasonable Force

51. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

52. The defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on plaintiffs.

53. As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Denial Of Constitutional Right To Fair Trial

54. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

55. The individual defendants created false evidence against plaintiff Nakia Green.

56. The individual defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office.

57. In creating false evidence against plaintiff Nakia Green, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

58. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Deliberate Indifference to Medical Needs

59. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

60. The individual defendants were aware of a risk to plaintiff Jameek Simmons's safety and a need for medical care and failed to act in deliberate indifference to plaintiff's needs.

9

61. Accordingly, defendants violated the Fourteenth Amendment because they acted with deliberate indifference to plaintiff Jameek Simmons's medical needs and safety.

62. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CLAIM
### Failure To Intervene

63. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

64. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

65. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

66. As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiffs respectfully request judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

DATED:  December 13, 2013
        New York, New York

HARVIS WRIGHT & FETT LLP

_____
Baree N. Fett
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
bfett@hwandf.com

*Attorneys for plaintiffs*